## Syphers *versus* Meighen.

1. A settler, claiming 400 acres, may dispose of a part of his claim and extend his claim in another direction so as to embrace as much land as he had sold, provided it be then vacant. A *subsequent* settler cannot gainsay such appropriation.

2. Though by such extension the claim of the first settler embraced *twenty* acres more than 400 acres, yet if the subsequent settler agreed to *a run* as a natural boundary between his claim and that of the first settler, he cannot afterwards object to the excess claimed by the first settler. The claim of such excess would not be valid as against *the Commonwealth ;* but the second settler is bound by his agreement.

3. The charge of the Court was sufficiently distinct in this case.

4. A deposition taken under a commission directed to *two* persons, but executed by but *one* of them, was not liable to objection on that account, no objection having been taken to it on that ground within the time limited by the rules of the Court, the deposition having been read without objection on a former trial of the same case several years before, and having been since on file in the prothonotary's office.

ERROR to the Common Pleas of *Greene county*.

This was an action of ejectment by Abraham Syphers *v.* Thomas H. Meighen and others, for 144 acres of land. The writ was issued on 20th September, 1849.

The plaintiff gave in evidence an application by himself, dated 6th February, 1829, with interest from March, 1807. Warrant dated 16th February, 1829. Survey in pursuance thereof dated 13th April, 1831, for 275 acres and allowance, accepted the 21st of March, 1834. Patent to plaintiff, dated 8th May, 1849, which embraced the lands in suit.

The defendants gave proof of an improvement made by *Alexis Jackson*, by virtue of which the defendants claimed the land in dispute. Alexis Jackson, on the 14th of August, 1804, sold the same to William Meighen, who on the 1st August, 1806, sold the same to Robert Whitehill. Application of Robert Whitehill, dated 13th April, 1829. Interest to commence from the 1st of March, 1794. Warrant dated the 4th April, 1829. Will of Robert Whitehill, dated the 24th August, 1829, and proved the 31st thereof, devising the same to the sons of William Meighen. Survey made for the sons of William Meighen in pursuance of the warrant to Whitehill on the 25th of February, 1834. Patent to Felix and Peter Meighen, dated the 2d of September, 1836, for

[Syphers *v.* Meighen.]

400 acres.   The interest of those to whom the lands was devised, was, by private and judicial sales, vested in the defendants.

Defendants further proved that the patent lines of one of the tracts of Willis and Shoemaker, cut off about 75 acres from the Spragg part of the Jackson improvements.   The Willis and Shoemaker patent is dated the 16th of December, 1796.

On part of the defendants it was further proved that *a certain run,* which ran from north to south, and parallel with the western line of defendant's survey, was spoken of by Stewart, *under whom the plaintiff* claimed, and by Jackson, under whom the defendants claimed, *as the boundary between them;* and that there is 100 acres between the line of defendant and the run.

On part of plaintiff it was proved that Jackson sold 100 acres off his improvements to Caleb Spragg, by article dated 27th March, 1804, for $100, which Spragg paid, and that there *was no improvement on the same when Spragg bought,* nor for several years after. Spragg afterwards took out a patent in which he embraced this, with a piece of land bought from another person.

On part of defendants was offered the deposition of Jacob Burley, filed in 1837, in a former suit, which was objected to on the ground that the commission was directed to *two* commissioners, and was executed by but *one.*

The Court overruled the objection, on the grounds that it was read on a former trial without objection; and that one of the commissioners refused to act for the reason that he was of opinion that he had no right to act in that capacity out of his office. Exception on part of plaintiff.

The commission was not set out on the paper-book.

In a rule of Court it was provided, viz. "Depositions (other than those taken under commission) shall be filed in a reasonable time; or the party at whose instance they were taken may retain them, provided he gives, within a reasonable time, to the adverse party or his attorney, a true copy of the rule, notice, and depositions; *and no objection shall be allowed at the trial, other than to the competency of the witnesses, or to the relevancy or the competency of the testimony, unless the party making them shall have given notice in writing to the opposite counsel, of his intention so to do, and his reasons for so doing,* within ten days after receiving the copy of notice of filing; *or shall have moved the Court on the first opportunity to suppress them.*"

Section 7.   "The prothonotary shall give notice to the respective attorneys, of the return of a commission, *and the same provision shall apply to the depositions taken under it, as is prescribed in section 4, above, in regard to other depositions filed.*"

The Court was requested to charge the jury: 1st. That the

defendant cannot, by virtue of the improvement made by Alexis Jackson, hold more than four hundred acres and allowance.

2d. That the defendant, or those under whom he claims, having sold one hundred acres off his improvement to Caleb Spragg, such one hundred acres are to be considered as part of the four hundred acres which he would be entitled to hold, and if with it he has more than four hundred acres and allowance, he cannot hold the excess beyond that amount; but the plaintiff having shown title to it will be entitled to recover such excess.

GILMORE, J., charged the jury, that the settlement of Jackson under whom the defendants claimed, being as early as the 1st of March, 1794, and that of Syphers or those under whom he claims being as late as 1807, and the hundred acres sold to Spragg by Jackson, being a part cut off the Shoemaker patent, dated 16th December, 1796, the said Jackson or Meighen had a right to extend westward, if he designated the run as the western boundary before 1807. No person had a right to gainsay this if he did not thereby include more than 400 acres; and this, notwithstanding, he was paid by Spragg, to whom he sold the hundred acres. Spragg perfected his title afterwards, but not on the Jackson settlement; but connected it with another settlement right which he had purchased. He might have got the title confirmed on the Jackson settlement, but preferred uniting his two surveys in one, to save the expense of two patents.

Jackson, as the earlier settler, might have resisted the appropriation of the Shoemaker warrant, embracing any part of what he claimed; but not having designated his boundaries, he might feel that he had been in default, and preferred yielding. It is true he had sold to Spragg and received one hundred dollars for the land; but this, we apprehend, would not prevent him from going west to make up his 400 acres, exclusive of the 100 acres sold to Spragg when there was no settler to gainsay him. If he designated his western boundary, and this was known to those under whom Syphers claimed and recognised as such, there could be no objection to Meighen afterwards running off 400 acres and allowance, making his western line east of the run.

It was assigned for error, that the Court erred in not charging as requested in the first and second points. 3d. In charging that if Jackson designated his western boundary, and this was known to those under whom Syphers claimed and recognised as such, there could be no objection to Meighen afterwards running off his 400 acres and allowance, east of the run. 4th. In permitting the deposition of Jacob Burley to be read.

*Downey*, for plaintiff in error.—As to the deposition was cited 4 *Dallas* 411; 3 *W. C. C. Rep.* 41; 1 *Id.* 43; 3 *Pa. Rep.* 41.

[Syphers *v.* Meighen.]

*Sayers*, for defendant.—Consentable lines are favored in law: 4 *Watts* 261; 5 *Ser. & R.* 231. Where two improvements adjoin, and the owners make a line, such line shall govern: 3 *Ser. & R.* 231.

The deposition of Burley was filed in 1837, and was read without objection on the trial of the case in 1842, and has been on file since. In the case of Swearingen *v.* Pendleton, 3 *Pa. Rep.* 41, the deposition was in the handwriting of one of the parties in interest, but it was said that this fact was not known to the adverse counsel, till shortly before the trial. That the deposition of Burley was admissible, reference was made to Pennock *v.* Freeman, 1 *Watts* 401; 9 *Watts* 387-393.

The opinion of the Court was delivered, September 27, by .

WOODWARD, J.—The paper-book contains none of the evidence in this case, and is otherwise so defective that we could not reverse the judgment even if it were much more questionable than it appears to be in such light as we have. The plaintiff claimed the land under an improvement warrant which went back to March, 1807. The defendants claimed under Alexis Jackson, who commenced an improvement in August, 1804. As between improvers, the first comer must be first served—first in time best in right. But the plaintiff says the Jackson improvement gave the defendants a right to hold no more than four hundred acres and allowance, and that Jackson having once made his appropriation and then sold off 100 acres to Spragg, cannot extend his lines so as to embrace the land in dispute. In other words, that the 100 acres sold to Spragg are to be counted to Jackson as part of his four hundred.

To this it was answered, as we infer from the charge of the Court, and from such statements as we have concerning the evidence:

1. That Jackson sold to Spragg in 1804, and extended his lines to embrace the lands in controversy *before* the improvement was commenced under which the plaintiff claims.

2. That Stewart, under whom the plaintiff claims, and Jackson, recognised a certain run as the boundary between them, up to which those coming in under Jackson have continued to claim.

If such were the evidence, and such it was, unless we are misled by the paper-book, the plaintiff's points were most conclusively answered. The Court said, Jackson's sale to Spragg would not prevent him from going further west to make up his 400 acres, exclusive of his sale to Spragg, when there was no settler to gainsay him. Certainly not. The whole field was open to him. He was entitled to 400 acres, and so long as the land around him was unappropriated, he might change his lines to suit his convenience It would seem that the 100 acres were claimed under an elder

[Syphers *v.* Meighen.]

right than his; and if, on finding this to be the case, he released them and took an equal quantity in another direction, a subsequent settler could not gainsay his act. Especially would such subsequent settler be estopped if he recognised and assented to a natural boundary which Jackson had adopted to define his amended claim. And even though that boundary included 20 acres more than the 400 and allowance, yet if the jury were satisfied the parties established the run as a consentable line, neither Stewart nor his alienees could cross it to take the 20 acres away from Jackson. As against the Commonwealth, Jackson would not have title, and a settler or warrantee under her might require him to locate his 400 acres and allowance so as to leave the 20 acres open to appropriation. But Stewart could not do this, though claiming under the Commonwealth, if he had concluded himself by an agreed boundary. Such agreements, especially when made between first settlers, are favored in law as tending to peace and good neighborhood, and when they have accomplished these purposes between the original parties through a whole lifetime, succeeding generations must be content to abide by landmarks that come to them so sanctioned.

The instruction of the Court was a sufficiently distinct answer of the plaintiff's points, and as favorable to him as he had a right to expect.

The objection to the deposition of Jacob Burley is too late. The deposition was taken in 1837, in a former suit, and read without objection. Now the objection is taken that the commission was directed to *two* commissioners, and executed by only *one* of them. The seventh rule of Court, taken in connection with the fourth, requires the prothonotary to give notice to the respective attorneys of the return of a commission, "and no objections shall be allowed at the trial, other than to the competency of the witnesses or to the relevancy or competency of the testimony, unless the party making them shall have given notice in writing to the opposite counsel of his intention so to do, and his reasons for so doing, within ten days after receiving notice of the filing." We are to presume that the prothonotary did his duty, and as no notice of objections was served, the party has slipped his time and is concluded by the rule.                The judgment is affirmed.